IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02600-MJW-MEH

RICK R. COBELLO, and
JULIE R. COBELLO,

    Plaintiffs,

v.

JOE PELLE, Boulder County Sheriff,
BOULDER COUNTY, by and through the BOULDER COUNTY BOARD OF
    COMMISSIONERS,
CATHY DUNPHY, and
JUDY MEYER,

    Defendants.

---

**ORDER REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 35)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    This case is before this Court pursuant to the Order of Reference Pursuant to 28 U.S.C. § 636(c) filed on March 7, 2007, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.

## I.  BACKGROUND AND CLAIMS

    Plaintiffs are the parents of Richard Ramone Cobello, III (Plaintiffs' son). Plaintiffs' son died on January 3, 2005, from injuries he sustained in a suicide attempt at the Boulder, Colorado, County Jail on December 31, 2004.  Defendants are Boulder County Sheriff Joe Pelle; Boulder County; Cathy Dunphy, a Boulder County deputy sheriff who was the primary officer for the intake module at the Boulder County Jail in

which Plaintiffs' son was held on December 31, 2004; and Judy Meyer, a nurse at the Boulder County Jail who performed a medical screening of Plaintiffs' son in the intake module at the Boulder County Jail on December 31, 2004.

The following facts are undisputed. Plaintiffs' son was arrested on December 30, 2004, after he robbed Vectra Bank in Boulder, Colorado, and he was booked into the Boulder County Jail at 5:40 p.m. The booking officer did not believe Plaintiffs' son was suicidal at any point during their interactions on December 30, 2004. At approximately 8:00 p.m. on December 30, Nurse Harvey at the Boulder County Jail met with Plaintiffs' son, took his vital signs, observed his behavior, mental state, and appearance, and questioned him regarding adjustment to incarceration. Nurse Harvey did not believe Plaintiffs' son was suicidal at any time during her interaction with him on December 30, 2004. On December 31, 2004, Defendant Meyer performed a medical screening of Plaintiffs' son in the intake module. Defendant Meyer did not believe Plaintiffs' son was suicidal at any time during her interactions with him on December 31, 2004. At approximately 10:45 on December 31, 2004, Defendant Dunphy served lunch and observed Plaintiffs' son. At 12:45 p.m. on December 31, 2004, Defendant Dunphy conducted a welfare check of Plaintiffs' son and observed him to be sleeping in his bunk. At 1:20 p.m. on December 31, 2004, Defendant Dunphy was notified by another inmate that something was wrong in the cell occupied by Plaintiffs' son and Plaintiffs' son was found hanging from a sheet tied to an air vent in the cell.

Plaintiffs assert three claims for relief in their Amended Complaint filed on January 30, 2007. The first two claims are asserted pursuant to 42 U.S.C. § 1983.

Plaintiffs first claim that Defendants violated their son's constitutional rights through deliberate indifference to his serious mental illness and by their failure to provide adequate medical and psychological care. Plaintiffs allege in their second claim that Defendants conspired to violate their constitutional rights by agreeing to misrepresent the facts surrounding the suicide of Plaintiffs' son. Plaintiff's third claim is a state law wrongful death claim pursuant to Colorado Revised Statutes § 13-21-202.

## II. PENDING MOTION

On November 21, 2007, Defendants' Motion for Summary Judgment and Supporting Brief was filed. On December 21, 2007, Plaintiffs' Response to Defendants' Motion for Summary Judgment was filed. On January 23, 2008, Defendants filed a reply. On February 12, 2008, the Court entered an order striking Plaintiffs' Exhibit No. 6 attached to their response to the motion for summary judgment as well as all evidence of subsequent remedial measures taken after December 31, 2004, and all evidence concerning the March 27, 2002, suicide of Angela Blazon.

The Court has considered carefully the motion for summary judgment, the response, the reply, applicable caselaw and the Federal Rules of Civil Procedure. The Court now being fully informed makes the following findings of fact, conclusions of law and order.

## III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." Id. (citing Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e)). "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . [S]ummary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1146-47 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & 252 (1986); Mares, 971 F.2d at 494). "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. at 1147 (quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

## IV.  DISCUSSION

## A.  First Claim for Relief

Defendants argue in the motion for summary judgment that Plaintiffs' first claim for relief must be dismissed because Plaintiffs may not raise a § 1983 claim asserting a violation of their son's rights, as opposed to a violation of Plaintiffs' own constitutional rights.  Plaintiffs do not dispute the fact that they are asserting a violation of their son's constitutional rights in the first claim for relief.  However, Plaintiffs argue that state law determines who may bring an action for violations of a decedent's constitutional rights and that, under Colorado state law, they have priority to make a wrongful death claim pursuant to Colo. Rev. Stat. § 13-21-201(1)(c)(I).

It is a "well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."  Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990).  However, this well-settled principle is not the end of the discussion when the § 1983 claim arises out of a situation that resulted in death.

> Although Congress clearly envisioned § 1983 to serve as a remedy for wrongful killings that resulted from the proscribed conduct, the statute itself does not provide a mechanism to implement such a remedy.  For instance, when the constitutional violation has resulted in death, § 1983 does not specify whether the cause of action it creates survives the death, who are the injured parties, the nature of the claims that may be pursued or who may pursue them, or the types of damages recoverable.

Berry v. City of Muskogee, 900 F.2d 1489, 1502 (10th Cir. 1990) (internal citations omitted).  Under these circumstances, "42 U.S.C. § 1988 authorizes federal courts to

undertake a three-step process to determine whether to borrow law from another source to aid their enforcement of federal civil rights statutes." Id.

> Section 1988 first directs that courts look to federal law "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." 42 U.S.C. § 1988. Second, if federal law is "not adapted to the object" or is "deficient in the provisions necessary to furnish suitable remedies and punish offenses," courts must consider borrowing the law of the forum state. Id. Third, the federal court must reject the application of state law if it is "inconsistent with the Constitution and laws of the United States." Id.

Berry, 900 F.2d at 1502 (internal footnote omitted).

As noted above, Plaintiffs argue that, under Colorado state law, they have priority to make a wrongful death claim against Defendants pursuant to Colo. Rev. Stat. § 13-21-201(1)(c)(I). However, a wrongful death action is not recognized in the Tenth Circuit as a federal remedy under § 1983. See id. at 1506-07; see also Naumoff v. Old, 167 F. Supp.2d 1250, 1253 (D. Kan. 2001). Instead, "[t]he remedy should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.' 42 U.S.C. § 1983." Berry, 900 F.2d at 1506-07. Because the estate of Plaintiffs' son is not a party to this action, Defendants' motion for summary judgment will be granted with respect to the first claim for relief.

## B. Second Claim for Relief

Plaintiffs contend in their second claim for relief that Defendants conspired to violate their constitutional rights by agreeing to misrepresent the facts surrounding the suicide of Plaintiffs' son. Defendants argue that Plaintiffs' second claim for relief must

be dismissed because Plaintiffs fail to allege any specific facts that would support the existence of a conspiracy to violate Plaintiffs' constitutional rights.

In order "to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990). Furthermore, "a plaintiff must allege specific facts showing an agreement and concerted action among the defendants." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).

Plaintiffs allege in support of their conspiracy claim that "Defendants, acting under color of law, entered into an agreement to misrepresent facts surrounding the violation of Plaintiffs' son's constitutional rights" (Am. Compl. ¶ 61); and "Defendants, acting under color of law, and in furtherance of this agreement, delivered false and misleading information to Plaintiffs' [sic], effectively concealing and suppressing facts about his suicide" (Am. Compl. ¶ 62). In their response to the motion for summary judgment, Plaintiffs identify the following allegations in the amended complaint as the specific facts that support their conspiracy claim:

> 47. Plaintiffs arrived at the Boulder County Jail on January 2, 2005, and met with personnel from the jail concerning their son.
>
> 48 Jail personnel, specifically nurse Judy Meyer, misinformed Plaintiffs regarding several key pieces of information about what happened with their son, including:

7

> A. That Plaintiffs' son was on suicide prevention at the jail and was being checked on every fifteen minutes.
>
> B. That Plaintiffs' son had been seen ten minutes before he attempted suicide.
>
> C. That staff had contact with Plaintiffs' son "a little after 1:00 p.m." on December 31, 2004[,] and that his method of suicide indicated he could not have been hanging that long.
>
> 50. Sergeant Ross Martinez told Plaintiffs that "officers conduct regular 15 minute checks and spend a good deal of time in the housing unit."
>
> 51. Sergeant Martinez also told Plaintiffs that "inmates are checked every fifteen minutes when they are on suicide precautions.

(Pls.' Resp. to Defs.' Mot. for Summ. J. at 43-44.)

The Court agrees with Defendants that these allegations do not establish the existence of a conspiracy. Nothing in the allegations identified by Defendants demonstrates any agreement or concerted action. Plaintiffs make only conclusory allegations in the amended complaint that Defendants entered into an agreement to misrepresent facts surrounding the violation of the constitutional rights of Plaintiffs' son and delivered false and misleading information to Plaintiffs in furtherance of that agreement. However, the specific factual allegations identified in Plaintiffs' response that are set out above do not even hint at the existence of an agreement and concerted action among Defendants to violate their rights. Therefore, Defendants are entitled to summary judgment on their second claim for relief.

8

**C. Third Claim for Relief**

**1. Colorado Revised Statutes § 13-21-203(6)**

Plaintiffs' third claim for relief is a state law wrongful death claim pursuant to Colo. Rev. Stat. § 13-21-202. Defendants first argue that the wrongful death claim against Defendants Pelle and Dunphy must be dismissed pursuant to Colo. Rev. Stat. § 13-21-203(6), which provides:

> The provisions of this section shall not apply to a peace officer, as described in section 16-2.5-101, C.R.S., or to any firefighter, as defined in section 18-3-201(1), C.R.S., for claims arising out of injuries sustained from an act or omission of such peace officer or firefighter acting in the performance of his or her duties and within the scope of his or her employment.

Plaintiffs do not dispute the facts that Defendants Pelle and Dunphy are peace officers and that the wrongful death claim against Defendants Pelle and Dunphy is for an injury sustained in the performance of their duties and within the scope of their employment. However, Plaintiffs contend that § 13-21-203(6) exempts peace officers like Defendants Pelle and Dunphy only from the provisions of § 13-21-203, and not from any liability for all wrongful death actions pursuant to § 13-21-202.

Defendants do not provide any support for their argument that § 13-21-203(6) shields peace officers from wrongful death actions. Furthermore, the Court agrees with Plaintiffs that the reference to "this section" in § 13-21-203(6) refers to the limitation on damages in § 13-21-203, and not to actions for wrongful death pursuant to § 13-21-202 generally. Therefore, Defendants' motion for summary judgment will be denied on this ground.

## 2. Colorado Revised Statutes § 13-80-103(1)(c)

Defendants next argue that the wrongful death claim against Defendants Pelle and Dunphy is barred by the statute of limitations. Defendants contend that the statute of limitations for a wrongful death action against a peace officer is one year pursuant to Colo. Rev. Stat. § 13-80-103(1)(c). That statute provides that "[a]ll actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority" must be commenced within one year after the cause of action accrues. Colo. Rev. Stat. § 13-80-103(1)(c).

In their response, Plaintiffs argue that the one-year limitation period in § 13-80-103(1)(c) is not applicable in this action and that their claim for wrongful death is subject to the two-year statute of limitations in § 13-80-102. That statute provides:

> (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
>
> . . .
>
> (d)     All actions for wrongful death.

Colo. Rev. Stat. § 13-80-102.

The Colorado courts have resolved similar conflicts between competing statutes of limitations through application of three rules of statutory construction. See Dawson v. Reider, 872 P.2d 212, 214 (Colo. 1994); Jones v. Cox, 828 P.2d 218, 223 (Colo. 1992). Those three rules are that a special statute preempts a general statute, a later statute is given effect over an earlier statute, and, because statutes of limitation are in

derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable. See Dawson, 872 P.2d at 214. In Jones, comparison of the specificity of the competing statutes was of key importance because both statutes were defined in terms of the type of civil action. See Jones, 828 P.2d at 223 (comparing statute applicable to automobile cases with statute applicable to torts in general).

In Dawson, like the instant action, "determining which statute is controlling by comparing the two statutes is not possible because one is defined in terms of the type of civil action while the other is defined in terms of the class of defendants." Dawson, 872 P.2d at 214. The second rule also was not a factor in Dawson because both statutes were repealed and reenacted in the same year. See id. The same is true in the instant action because Plaintiffs assert, and Defendants do not dispute, that both § 13-80-102 and § 13-80-103 were repealed and reenacted in 1986. Therefore, in Dawson, resolution of the conflict came down to the third rule of statutory construction, which provides that a longer period of limitations should prevail when two statutes arguably are applicable because statutes of limitation are in derogation of a presumptively valid claim. See id.

Consistent with the Colorado Supreme Court's analysis in Dawson, the Court finds that Plaintiffs' wrongful death claim in this action is subject to the two-year statute of limitations in § 13-80-102(1)(d) and, as a result, is not barred by the one-year statute of limitations in § 13-80-103(1)(c). Therefore, Defendants' motion for summary judgment also will be denied on this ground.

### 3. Certificate of Review

Defendants next argue that the wrongful death claim against Defendant Meyer must be dismissed because Plaintiffs failed to file a certificate of review as required under state law. Defendants contend that a certificate of review is required in this case because Defendant Meyer is a Registered Nurse licensed in the State of Colorado and expert testimony is required to establish a medical malpractice claim against her. Plaintiffs argue that no certificate of review is required for their wrongful death claim against Defendant Meyer because they are not asserting a claim of professional negligence against Defendant Meyer. Instead, Plaintiffs contend that the wrongful death claim against Defendant Meyer is based on her alleged negligent failure to place Plaintiffs' son on suicide protocol when he was an obvious suicide risk. Plaintiffs characterize the alleged negligence in this case as involving suicide prevention and not nursing treatment. Alternatively, if the Court determines a certificate of review is required, Plaintiffs ask either that the report of William J. Crout be considered as such a certificate or that they be given an opportunity to submit a certificate at this time.

Colorado law provides that "[i]n every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party." Colo. Rev. Stat. § 13-20-602(1)(a). "The statute applies to all claims against licensed professionals wherein expert testimony is required to establish the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself in compliance with the

12

responsibilities inherent in the assumption of the duty." Martinez v. Badis, 842 P.2d 245, 252 (Colo. 1992). "The purpose of a certificate of review is to demonstrate that the plaintiff has consulted a person who has expertise and that such person has concluded that the plaintiff's claim is meritorious." Shelton v. Penrose/St. Francis Healthcare Sys., 984 P.2d 623, 628 (Colo. 1999). The certificate of review shall declare

> (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and
>
> (II) That the professional who has been consulted pursuant to subparagraph (I) of this paragraph (a) has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification within the meaning of section 13-17-102(4).

Colo. Rev. Stat. § 13-20-602(3)(a). "The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim." Colo. Rev. Stat. § 13-20-602(4).

The Court agrees with Defendants that Colorado law requires a certificate of review with respect to the negligence claim being asserted against Defendant Meyer. As noted above, the statute requiring a certificate of review "applies to all claims against licensed professionals wherein expert testimony is required to establish the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself in compliance with the responsibilities inherent in the assumption of the duty." Martinez v. Badis, 842 P.2d 245, 252 (Colo. 1992).

It is undisputed that Plaintiffs' claim against Defendant Meyer, who was acting in her capacity as a nurse at the Boulder County Jail, is premised on her alleged failure to place Plaintiffs' son on suicide protocol based on her medical screening of Plaintiffs' son on December 31, 2004. Despite Plaintiffs' arguments, the Court agrees that their negligence claim against Defendant Meyer requires an analysis of whether she satisfied the professional standard of care for nurses. As a result, a certificate of review is required.

The next question, then, is whether Plaintiffs can rely on the report of William J. Crout as satisfying the certificate of review requirement with respect to their wrongful death claim against Defendant Meyer. The Court agrees with Defendants that the report of Mr. Crout does not satisfy the certificate of review requirement because Mr. Crout testified that he was not qualified to give an opinion as a doctor, nurse, or other medical or mental health expert.

The last question, then, is whether the wrongful death claim against Defendant Meyer must be dismissed based on Plaintiffs' failure to file a certificate of review. Because the Court already has determined that expert testimony is required with respect to the negligence claim against Defendant Meyer, Plaintiffs can avoid dismissal of this claim only by demonstrating that good cause exists for their failure to file a certificate of review within the time allowed by state law. See Martinez, 842 P.2d at 251. To determine whether good cause exists, the Court must consider "(1) whether the neglect causing the late filing was excusable; (2) whether the moving party had alleged a meritorious defense or claim; and (3) whether permitting the late filing would

14

be consistent with equitable considerations, including any prejudice to the nonmoving party." Yadon v. Southward, 64 P.3d 909, 913 (Colo. Ct. App. 2002). Although the "failure to satisfy any one of the three criteria" can demonstrate a lack of good cause, the Court "must consider all three criteria because evidence relating to one factor may shed light on another." Id.

Plaintiffs argue that they have demonstrated good cause because Defendants waited until all pre-trial deadlines had passed before moving to dismiss based on the lack of a certificate of review, because the report of William Crout meets the requirements of the certificate of review statute, and because Defendants will not suffer any prejudice. The Court disagrees. Defendants have demonstrated that Plaintiffs were placed on notice regarding the certificate of review requirement in a letter to counsel dated February 23, 2007, in the Answer to Plaintiffs' amended complaint filed on March 27, 2007, and in the Court's Scheduling Order filed on May 10 2007. In addition, as discussed above, Mr. Crout's report does not satisfy the certificate of review requirement. Finally, Defendants allege, and the Court agrees, that they will suffer prejudice if Plaintiffs are allowed to obtain and file a certificate of review at this late date because fact and expert discovery already have been completed. Therefore, the Court finds that Plaintiffs have failed to demonstrate good cause for their failure to file a certificate of review. Defendants' motion for summary judgment will be granted as to the wrongful death claim against Defendant Meyer, and that claim will be dismissed.

**4. Willful and Wanton Conduct**

Defendants next argue that any wrongful death claim Plaintiffs may be asserting

against Defendants Pelle, Dunphy, or Murphy based on willful and wanton conduct must be dismissed. Plaintiffs, in their response, state that they are not pursuing a claim for willful and wanton conduct against Defendants Pelle, Dunphy, or Meyer.

## 5. Colorado Governmental Immunity Act

Defendants next argue that Plaintiffs' wrongful death claim is barred by the Colorado Governmental Immunity Act (CGIA), Colo. Rev. Stat. §§ 24-10-101, et seq. "When the CGIA is overlaid onto the Wrongful Death Act, recovery is further limited when a party brings a wrongful death action against a governmental entity or employee." Steedle v. Sereff, 167 P.3d 135, 138 (Colo. 2007). The CGIA provides that,

> [e]xcept as provided in sections 24-10-104 to 24-10-106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

Colo. Rev. Stat. § 24-10-108; see also Colo. Rev. Stat. § 24-10-106(1) ("A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chose by the claimant except as provided otherwise in this section.").

Plaintiffs argue that their wrongful death claim is not barred by the CGIA because sovereign immunity is waived by a public entity in an action for injuries that result from "[t]he operation of any public hospital, correctional facility, as defined in section 17-1-102, C.R.S., or jail by such public entity." Colo. Rev. Stat. § 24-10-106(b). Furthermore, the CGIA specifically provides that "[t]he waiver of sovereign immunity

16

created in paragraphs (b) and (e) of subsection (1) of this section does apply to claimants who are incarcerated but not yet convicted of the crime for which such claimants are being incarcerated if such claimants can show injury due to negligence." Colo. Rev. Stat. § 24-10-106(1.5)(b). Based on this waiver of sovereign immunity, I agree with Plaintiffs that their wrongful death claim is not barred by the CGIA and Defendants' motion for summary judgment will be denied on this ground.

**6. Merits of the Wrongful Death Claim**

Defendants finally argue that Plaintiffs have failed to present admissible evidence sufficient to establish a prima facie case of negligence. "To recover on a claim of negligence, the plaintiff must establish the existence of a legal duty on the part of the defendant, breach of that duty by the defendant, causation, and damages." Davenport v. Community Corrections of the Pikes Peak Region, Inc., 962 P.2d 963, 966 (Colo. 1998). Defendants specifically argue that they are entitled to summary judgment because the undisputed facts demonstrate that the booking officer at the jail did not believe Plaintiffs' son was a suicide risk and neither of the two nurses who interviewed Plaintiffs' son at the jail believed he was a suicide risk. Furthermore, Defendants contend that there is no evidence regarding the behavior of Plaintiffs' son while at the jail to indicate any risk of suicide.

As noted above, Plaintiffs "may not rest upon mere allegations or denials of [their] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Plaintiffs were required in their response to the summary judgment motion to "set forth specific facts

17

that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id. Plaintiffs "cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

Plaintiffs have not identified any admissible evidence to demonstrate that their son exhibited any suicidal ideation or behavior prior to his actual suicide attempt or that any of the named Defendants were negligent in failing to ascertain that Plaintiffs' son was a suicide risk. Therefore, the Court finds that Plaintiffs have failed to demonstrate, with admissible evidence, the existence of a prima facie case of negligence. As a result, Defendants are entitled to summary judgment on the wrongful death claim.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment and Supporting Brief (Docket No. 35) is granted, the Amended Complaint and this civil action are dismissed with prejudice with costs awarded to defendants, and Judgment to enter accordingly. It is thus further

**ORDERED** that Defendants' Motion in Limine (Docket No. 68) and Defendants' Motion to Exclude Expert Testimony of William J. Crout Pursuant to Fed. R. Evid. 702 (Docket No. 69) are denied as moot. It is further

**ORDERED** that the Trial Preparation Conference set for May 16, 2008, at 9:00

a.m., and the Jury Trial set for June 16, 2008, at 8:00 a.m. are vacated.


Dated: March 31, 2008					s/Michael J. Watanabe
	Denver, Colorado				Michael J. Watanabe
							United States Magistrate Judge